## HIBBS v. CITY NAT. BANK OF WICHITA FALLS. (No. 2790.)

Court of Civil Appeals of Texas. Amarillo. March 23, 1927.

Rehearing Denied April 20, 1927.

1. Homestead ⊚⟿181½—Whether temporary rental of portion of homestead constituted abandonment held for jury.

Question whether renting of small house on homestead under lease intended as temporary constituted abandonment of homestead rights *held* for jury.

2. Homestead ⊚⟿181½—Good faith of husband conveying lot without wife joining, and designating other property as homestead, held for jury.

Where husband, without consent of wife, conveyed lot and attempted in deed to designate property other than lot conveyed as family homestead, question of his good faith in so doing *held* for jury.

3. Appeal and error ⊚⟿927(7)—In determining propriety of instructed verdict, appellate court must consider testimony from appellant's standpoint.

In determining propriety of an instructed verdict, it is duty of appellate court to consider testimony from the appellant's standpoint.

4. Homestead ⊚⟿169—Husband who conveyed lot without joinder of wife could not deprive lot of homestead character, there being no estoppel or abandonment.

Husband could not, without joinder of his wife, convey lot and deprive it of its homestead character, where there were no elements of estoppel against wife and there had been no abandonment of premises without intent to again use them as homestead.

5. Homestead ⊚⟿168—Where husband, without joinder of wife, mortgaged temporarily rented portion of homestead, it was error to instruct verdict of foreclosure (Const. art. 16, § 51).

Where part of homestead was rented temporarily, and it appeared that owners contemplated discontinuing to rent it when circumstances permitted, it was error to instruct verdict of foreclosure of a mortgage, executed by husband alone, on the rented portion of homestead, in view of Const. art. 16, § 51, providing that any temporary renting of homestead shall not change character of same when no other homestead has been acquired.

6. Homestead ⊚⟿181(1)—Where property has been impressed with homestead character, burden is upon opposing party to prove abandonment.

Where property has once been impressed with homestead character, burden is upon opposing party to prove abandonment.

7. Homestead ⊚⟿154—Where claimant to homestead rights still occupies homestead, or any part thereof, issue of abandonment turns mainly on his intention.

Where claimant to homestead rights is still occupying original homestead, or any part thereof, issue of abandonment turns mainly on real intention of homesteader.

8. Homestead ⊚⟿181½—Question of intention to abandon homestead rights held one of fact for jury.

Question whether homesteader still occupying part of homestead intended to abandon homestead rights *held* one of fact for jury.

9. Homestead ⊚⟿12—Wife's right in homestead is vested right in land, of which she cannot be deprived except as permitted by Constitution and Statutes.

Wife's right in homestead is vested right in land itself, of which she cannot be deprived except as pointed out by the Constitution and statutes.

10. Homestead ⊚⟿169—Covenant in mortgage, executed by husband alone, that premises are not homestead, does not bind wife, where she is not estopped.

Covenant in mortgage, executed by husband alone, that premises conveyed are not the homestead, does not bind wife, unless she made representations to mortgagee which would amount to an estoppel.

11. Homestead ⊚⟿169—Attempt of husband to give lien on homestead and abandon homestead in fraud of wife's rights is void as against wife.

Where husband attempts to abandon homestead in fraud of rights of wife, and to evade constitutional exemption by giving lien upon it, such attempt is void as against his wife.

Appeal from District Court, Wichita County; Guy Rogers, Judge.

Suit by the City National Bank of Wichita Falls against Ralph Hibbs and wife. From a judgment for the plaintiff, defendant Mrs. Alta Hibbs appeals. Reversed and remanded.

Weeks, Morrow, Francis & Hankerson and Neal Powers, all of Wichita Falls, for appellant.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee.

HALL, C. J. . This suit was filed July 27, 1925, by the appellee bank against Ralph Hibbs and wife, Mrs. Alta Hibbs, in trespass to try title, the petition alleging in substance that on October 16, 1924, plaintiff bank was lawfully seized and possessed of lot 18 in block 5 of the Sibley-Taylor addition to the city of Wichita Falls.

On July 27, 1925, Mrs. Hibbs answered by general demurrer and a general denial. She specially pleaded that she and her codefendant, Ralph Hibbs, were husband and wife; that lot 18 in block 5 of said addition was

acquired by them prior to the 16th day of October, 1924, for the purpose of using, occupying, and enjoying the same as their homestead, and that at all times since its acquisition they had used, occupied and enjoyed it as a homestead; that the deed dated October 16, 1924, under which the bank claimed, was in fact a mortgage given by her husband to secure an indebtedness of $1,500 which he had borrowed from the bank; that the execution of said deed was a mere subterfuge for the purpose of attempting to defeat and defraud appellant of her homestead rights in and to the lot in controversy; that the claim constituted a cloud upon her title to the lot in controversy, and she prayed that the same be canceled; and for general and special relief.

The bank, by supplemental petition, alleged that Ralph Hibbs, on or about February 18, 1924, executed and delivered his certain promissory note in the sum of $1,656.78, payable to appellee, with interest at 10 per cent., and providing for ten per cent. as attorney's fees; due six months after date, and to secure the payment of said note Ralph Hibbs executed and delivered to C. E. Basham, trustee, his deed of trust on said lot 18. It is further alleged that at the time of the execution of the deed of trust Hibbs was a married man, the head of a family, and owned, used, and occupied lots 19 and 20 in said block 5 of said addition as his homestead; that in said deed of trust Hibbs then and there designated lots 19 and 20 in said block 5 as his homestead; and that if for any reason said lot 18 had theretofore been the home of Hibbs and appellant, Mrs. Alta Hibbs, then the act of Ralph Hibbs in executing said deed of trust, conveying lot 18, operated as an abandonment of lot 18 as his homestead, and that he and his wife were estopped to claim lot 18 as their homestead. The bank further pleads that the note was long past due and unpaid, and prayed that in the event the deed should be construed to be a mortgage that it have judgment against the defendant Ralph Hibbs for the amount of the note, interest and attorney's fees, and for foreclosure against Hibbs and his wife of the mortgage lien upon lot 18.

Upon the issues thus joined the case was tried to a jury, but after the evidence was all in the court, upon motion of the appellee bank, instructed the jury to find for appellee as to the west 48 feet of lot 18, and for appellant as to the east 92 feet of lot 18, and judgment was accordingly entered foreclosing the bank's lien on the west 48 feet of the lot.

It appears from a plot, which is made a part of the statement of facts, that lots 18, 19, and 20 are a part of block 5 of said addition; that each of said lots front 50 feet on Yale avenue in Wichita Falls; that lot 18 is on the southeast corner of said block 5 and also fronts 140 feet on Twenty-Second street in said city. The plot further shows that the residence of Hibbs and wife covers parts of lots 19 and 20; that they have a garage on the rear end of lot 20; and that there are picket fences inclosing small plots on the rear end of both lots 19 and 20; that 48 feet of the rear end of lot 18 is separated from the front 98 feet by a "rod fence," and is occupied by a small residence 30x25 feet, which fronts on Twenty-Second street, and this 48 feet is the part of the lot upon which the court's judgment foreclosed the bank's lien.

[1] Mrs. Hibbs presents her case here under three propositions: The substance of the first is that, the uncontroverted evidence having shown that lot 18 was acquired as a part of the homestead of the family, and was so used for several years after its acquisition, the question as to whether or not the renting of the small house on the rear or west end thereof constituted an abandonment was, under all the evidence, a fact for the jury.

[2, 3] The next proposition in substance is that because the evidence shows that in the pretended deed and deed of trust the husband of appellant attempted to designate property other than the lot in controversy as the family homestead, the issue as to whether or not in so doing he acted in good faith was for the jury to decide. We think these propositions are sound. In determining the propriety of an instructed verdict, it is the duty of the appellate court to consider the testimony from the appellant's standpoint. It appears that Hibbs executed a deed of trust to secure his indebtedness to the bank on February 18, 1924, and thereafter executed and delivered a deed conveying lot 18 to the bank on October 16, 1924. He made no attempt to deliver possession of the lot until June 23, 1925, when he gave the bank a letter authorizing it to take possession thereof. The substance of the testimony is that the small house on the back end of lot 18 was built about three years prior to the date of the trial and about one year before the execution of the deed of trust. While it is shown that the house had been rented, it further appears from the appellant's testimony that the lease was only by the month and was intended to be a temporary renting. The small house consisted originally of two rooms built on the rear end of lot No. 19 and was for a while occupied by the mother of Hibbs, who constituted a part of his family and was maintained and supported by him while she occupied the house. After her removal to California the two rooms were moved onto the back end of lot 18 and another small room added. Adjoining this house, on the rear end of lot 18, was a space about 20 feet square which Hibbs testified he used in connection with his home for storing his builder's tools and supplies. The appellant testified that she did not know her husband had signed the deed of trust until after he had executed it and delivered it to the bank; that an of-

ficer of the bank called her up and asked her to join her husband in executing the instrument; that she refused and told the bank official that lot 18 was her homestead. The effect of her testimony is to impeach the good faith of her husband in attempting to dispose of her property in the manner stated. She was not asked to sign the deed, which Hibbs subsequently executed to the bank and delivered without her knowledge.

[4] It may be reasonably implied that before the execution of the deed of trust, lot 18 had been used in connection with the homestead and had become impressed with the homestead character. Hibbs could not, by an instrument executed without the joinder of his wife, divest the lot of its homestead character. Her assent to such a proceeding was necessary, and there must be some element of estoppel against her or an actual abandonment of the premises without the intent to again use the lot as a part of her home in order to make the abandonment effectual. The Constitution provides (article 16, § 51), that "any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired." The lessee of the small house on the rear of lot 18 had no interest in the front end of the lot. Hibbs testified that the front end of the lot was used as a playground for his children in connection with his home. Mrs. Hibbs testified that when she told the bank official that lot 18 was a part of her homestead he said, "I don't want your home. You understand we have got all the property we can handle. We want the deed as a security." Hibbs and his wife had owned the lot about six years, and during that time the appellant had planted flowers and shrubbery over those portions of the three lots not covered by the houses and improvements. Mrs. Hibbs testified that the little, two-room house first built on lot 19 was for her mother-in-law, who was dependent upon them for her support and who had lived with them about two years, occupying the two rooms rent free, and that after the removal and death of her mother-in-law the small house was moved on to lot 18 and the addition made thereto and temporarily leased in order to supplement their income, which they needed at that time. She testified specifically that at the time they rented the house, and at all times since, they had the intention, when their circumstances permitted, to discontinue renting it, and that she notified the official of the bank of such intention at the time he asked her to sign the deed of trust.

[5] In the face of these facts, we think the court erred in instructing a verdict for the bank as to the 48 feet upon which the small house stands on the rear of lot 18.

[6-11] The general rule is that the issue of abandonment is one of fact to be determined by the jury, and if property has once been impressed with homestead character, the burden is upon the opposing party to prove abandonment. The issue of abandonment turns mainly on the real intention of the homesteader under cases where the claimant is still occupying the original homestead or any part thereof; and the question of intention is uniformly held to be one of fact for the jury. A wife's right in the homestead is a vested right in the land itself, of which she cannot be deprived except as pointed out by the Constitution and statutes. A covenant in a mortgage executed by a husband alone that the premises conveyed are not the homestead does not bind the wife, unless she made representations to the mortgagee which would amount to an estoppel, and where the husband attempts to abandon the homestead in fraud of the rights of the wife, and to evade the constitutional exemption by giving a lien upon it, such attempt is void as against his wife. McDonald v. Clark (Tex. Sup.) 19 S. W. 1023; Orr v. Wallace (Tex. Civ. App.) 285 S. W. 650; Bowman v. Watson, 66 Tex. 295, 1 S. W. 273; Rollins v. O'Farrel, 77 Tex. 90, 13 S. W. 1021; Hensley v. Shields, 6 Tex. Civ. App. 136, 25 S. W. 37; Shook v. Shook, 21 Tex. Civ. App. 177, 50 S. W. 731; Newton v. Calhoun, 68 Tex. 451, 4 S. W. 645; Whitley v. Alexander (Tex. Civ. App.) 198 S. W. 173; H. P. Drought & Co. v. Stallworth, 45 Tex. Civ. App. 159, 100 S. W. 188; Prufrock v. Joseph (Tex. Civ. App.) 27 S. W. 264; Parker v. Schrimsher (Tex. Civ. App.) 172 S. W. 165.

The question raised by the third and last proposition may not arise upon another trial. We will therefore not discuss it.

For the reasons stated, the judgment is reversed and the cause remanded.