RANDALL, Circuit Judge,
dissenting:
Today the panel holds that under the facts of this case a debtor is estopped from claiming his Texas constitutional homestead exemption for property which is admittedly his homestead because he has previously obtained the release of a judgment lien on another piece of property (the Condo) by fraudulently claiming the Condo as his homestead. Because I think that this holding is without basis in existing Texas homestead law, I respectfully dissent.
I.
Nearly one hundred years of Texas decisions have held that a homestead claimant is not estopped to assert his homestead exemption on the basis of declarations made to the contrary. As the Texas Supreme Court has stated:
The Constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise thereby in favor of a lender who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife made orally or in writing contrary to the fact. To hold otherwise would practically abrogate the Constitution.
If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead contrary to the fact will enable parties to evade the law and encumber homesteads with liens forbidden by the Constitution.
Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 89, 13 S.W. 12, 13 (Tex.1890) (citations omitted); see also Burkhardt v. Liberman, 138 Tex. 409, 415, 159 S.W.2d 847, 852 (Tex.Comm’n App.1942, opinion adopted); Lincoln v. Bennett, 138 Tex. 56, 61-62, 156 S.W.2d 504, 506-07 (1941). This rule applies even if, as in this case, the homestead claimant has executed, acknowledged, and filed in the deed records an instrument designating a contrary homestead. See Lincoln, 138 Tex. at 58, 156 S.W.2d at 505. The majority is heavily influenced by the fact that the debtor Ni-land “received a manifest and material benefit as a result of [his earlier fraudulent homestead] claim: a creditor lifted a judgment lien on the Condo.” But the fact is that in those Texas cases refusing to apply estoppel against a homestead claimant, there was always some benefit gained by the homestead claimant that induced him to make the false homestead designation— usually the obtaining of a loan that the lender acquiring the invalid lien on homestead property would not otherwise have made. Hence, it is clear that mere benefit to the homestead claimant is insufficient to estop him from later claiming his homestead. However, it is just another type of benefit that the panel held to operate to estop the homestead claimant in this case.
The panel attempts to support its decision by arguing that under Texas law a person is only entitled to one homestead and that to refuse to invoke the doctrine of estoppel in this case would allow the debtor Niland to reap the benefits of two homestead exemptions. Although the panel is correct that a Texas homestead claimant is only entitled to a single residential homestead, this argument misses the point because it ignores the fact that Niland received no actual homestead rights in the Condo because of his representations to CSA and Technical Chemical Company (“TCC”). The panel opinion states: “We do not believe that the Texas courts would permit a fraudulent homestead claimant to receive greater homestead rights than the honest debtor who properly claims the single homestead exemption to which he is entitled.” Niland, however, received no homestead rights in the Condo by his declaration to TCC; he merely convinced TCC to *277 release its lien. There is no finding that TCC attempted to execute judgment on the Condo, or that a Texas court of competent jurisdiction had held that execution could not be had because of the homestead character of the Condo. Hence, Niland merely received another benefit by his fraud, in addition to obtaining a loan that he possibly would not otherwise have obtained, when he convinced TCC to release its lien on the Condo; he received no homestead rights.
The Texas courts have frequently applied Texas homestead law to aid the undeserving, because of a perception that to permit an estoppel to operate on the basis of a sworn declaration by a person living on property that the property is not his homestead would result in the routine execution of such affidavits by persons owning homesteads in order to obtain non-purchase money loans, thereby rendering the constitutional protection of homesteads nugatory. Comment, Estoppel of Husband and Wife to Claim Constitutional Protection of Their Homestead, 25 Tex.L.Rev. 76, 85 n. 42 (1947). It is of course possible that the Texas courts would choke on Niland (more undeserving than most) and would carve out the exception suggested by the panel opinion. But the fact remains that no prior Texas cases have done so and it is not the province of this court to modify Texas constitutional law.
II.
Even assuming that a Texas court would apply estoppel on the facts of this case as related in the panel opinion, it is unlikely that estoppel would be applied when other undisputed facts in this case are given proper consideration. In order to demonstrate why estoppel is inappropriate, it is only necessary to point out some factual matters that are omitted from or given only brief consideration in the panel opinion. First, the panel opinion casts Deason in the role of a mere good faith purchaser at a foreclosure sale, who bought without knowledge or notice of Niland’s adverse homestead claim. This picture is contrary to the actual facts in this case. Deason had at least constructive notice of the homestead status of the property at the time that he purchased at the foreclosure sale. The bankruptcy court found that pri- or to the foreclosure sale at which Deason acquired the property, he and his wife had been shown the property by a realtor, and that Niland was present at this time and living in the property. See In re Niland, 50 B.R. 468, 473-74 (Bankr.N.D.Tex.1985). At the time Deason was shown the property, it was listed for an asking price of either $545,000 or $495,000. Id. When Deason purchased the property at the foreclosure sale, he paid only $320,000. Id. The bankruptcy court found the fair market value of the property at the time of the foreclosure sale to be $370,000. Id. at 474. Hence, the facts establish that Deason, far from being an innocent purchaser at the foreclosure sale, had ample facts to put him on notice that the property might be Niland’s homestead. Having such notice, Deason could not under Texas law invoke the doctrine of estoppel. Burkhardt, 138 Tex. at 415-16, 159 S.W.2d at 851-52. As one commentator has noted:
This doctrine of “constructive notice” to the purchaser is sometimes rather harsh in its result, since in almost all of these cases there has been conduct either intentionally or constructively fraudulent on the part of the [homestead] claimants. However, the policy of the courts has been to go rather far in protecting the family homestead, and the buyer of lien notes or realty must come into court with absolutely clean hands.
Comment, supra, 25 Tex.L.Rev. at 81. Furthermore, the facts indicate that Deason, hoping to obtain the property at $225,000 less than its original listing price and $50,-000 less than its fair market value, declined to purchase the property from Niland but instead merely awaited the foreclosure sale. Texas courts have not been inclined to protect purchasers at a foreclosure sale; the general rule is that a purchaser at a foreclosure sale buys at his peril. Henke v. First Southern Properties, Inc., 586 S.W.2d 617, 620 (Tex.Civ.App.—Waco 1979, writ ref’d n.r.e.). Furthermore, “[t]he general effect of a ‘good faith purchaser for value without notice’ does not apply to a purchaser at a void foreclosure sale. A *278 purchaser at a foreclosure sale obtains only such title as the trustee had authority to convey.” Diversified, Inc. v. Walker, 702 S.W.2d 717, 721 (Tex.App.—Houston [1st Dist.] 1985, writ ref d n.r.e.). Had Deason wanted to be fully protected, he could have simply purchased the property from Ni-land. He would have received a warranty deed from Niland, and this litigation would not have arisen. Instead, thinking that he could obtain the property for less than it was worth, Deason bought at a foreclosure sale. He was able to get the property at a good price, but, under Texas law, he risked the possibility that there would be a failure of title, as in fact there was (or should have been). In short, Deason, hardly an innocent purchaser to begin with, took his chances at buying at the foreclosure sale and when the deal went bad he sought relief in court. A Texas court would not protect him, and this court should also decline to do so.
Similarly, appellant CSA is hardly free of wrongdoing in this case. Again, the panel opinion casts CSA in the role of an innocent financial institution that was “taken in” by the unscrupulous Niland’s false affidavit that the Condo, and not the property in question, was his homestead. This characterization of CSA is inaccurate for two reasons. First, the bankruptcy court found that Niland was living in the property at the time that the loan was made, thus putting CSA on constructive notice of the homestead status of the property. Second, the bankruptcy court found, and CSA apparently does not dispute, that a CSA loan officer accepted a $5,000 bribe from Niland to expedite the loan. In re Niland, 50 B.R. at 472. Although the bankruptcy court found as a fact that CSA relied on Niland’s affidavit that the property was not his homestead at the time that they granted Niland the loan, one wonders whether, in the absence of the bribe, CSA would have taken more time to investigate the possible homestead status of the property more closely before making the loan. CSA, therefore, like Deason, can hardly be said to be a good faith actor in this case, and would therefore also not be entitled to seek equity before either a Texas court or this court. Assuming that Deason, as a purchaser at an invalid execution sale, would be entitled to be subrogated to CSA’s rights, see, e.g., Russell v. Starkeys, 286 F.2d 736, 739 & n. 4 (5th Cir.1961), this would still not enable Deason to assert the equitable doctrine of estoppel. Hence, regardless of whether the majority of this panel correctly applied Texas law, Deason should not be able to assert estoppel against Niland.
III.
The bankruptcy and the district judge, both knowledgeable in Texas law, correctly decided the estoppel issue. I would affirm their decision that Niland was not estopped to assert his homestead exemption.